UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA HENDRIKSMA,

    Plaintiff,

v().                                           Case No. 1:14-cv-154
                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on March 23, 1955 (AR 169).[1] She alleged a disability onset date of September 1, 2010 (AR 169). Plaintiff completed one year of college and has additional job training as a medical assistant (AR 174). She had previous employment as a travel agent, sales clerk, school bus driver and president of a sausage company (AR 175). Plaintiff identified her disabling conditions as: fibromyalgia, memory loss, scoliosis, Renault's [Raynaud's] syndrome, depression, arthritis, insomnia, stiff muscles, trouble swallowing, chronic pain, headaches, ringing in the ears, weakness in hands, arms, legs and feet, and tremors (AR 173). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on

---

[1] Citations to the administrative record will be referenced as (AR "page #").

December 27, 2012 (AR 24-33). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity during the period from her alleged

onset date of September 1, 2010 through March 31, 2011, when plaintiff last met the insured status requirements of the Social Security Act (AR 26).  At the second step, the ALJ found that through the last date insured, plaintiff had the following severe impairments: status post hemi-arthroplasty / metatarsophalengeal; joint of great toe [sic] degenerative changes of the toe; dextroscoliosis of the thoracic spine; hypertension; fibromyalgia; history of Raynaud's, right shoulder mild tendinosis of supraspinatus; tendon and mild osteoarthritis of the arthroclavacular joint; and bilateral venous insufficiency (AR 26).  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 27-28).  Specifically, plaintiff did not meet the requirements of Listing 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine) and 4.11 (chronic venous insufficiency) (AR 27-28).

>   The ALJ decided at the fourth step:

> [T]hat, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to less than frequent kneeling, crawling, balancing, stooping, crouching, and climbing of ramps or stairs.  She cannot climb ladders, ropes or scaffolds.  In addition, the claimant should avoid all exposure to extreme temperatures, and should avoid concentrated exposure to extreme heat, and to humidity, vibration, and hazards such as unprotected heights and dangerous moving machinery.

(AR 28). The ALJ also found that plaintiff was capable of performing past relevant work as a food sales clerk, travel agent, school bus driver, and cashier, work which was not precluded by her residual functional capacity (RFC) (AR 32).  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 1, 2010 (the alleged onset date) through March 31, 2011 (the date last insured) (AR 32-33).

### III. ANALYSIS

Plaintiff raised two issues on appeal[2]:

**A.   The Commissioner's assessment of plaintiff's physical RFC is not supported by substantial assessment or the relevant legal standards.**

Plaintiff identified this issue as involving an erroneous residual functional capacity (RFC) assessment. Plaintiff's Brief (docket no. 11 at p. ID# 572). Plaintiff's argument, however, contests the ALJ's credibility determination. *Id.* at pp. ID## 572-82). The Court will address this credibility argument. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be

---

[2] Plaintiff did not set forth a "Statement of Errors" as directed by the Court. *See* Notice (docket no. 9). The Court will address two issues gleaned from the brief.

reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

> The ALJ evaluated plaintiff's credibility as follows:
>
> In the documents submitted as part of the claimant's Social Security application, and in the hearing testimony, the claimant's alleged impairments, symptoms, and the effect that both of these on the claimant's activities of daily living have been described. The claimant is alleged to be disabled as a result of fibromyalgia, memory loss, scoliosis, renault's syndrome, depression, arthritis, insomnia, stiff muscles, difficulty swallowing, chronic pain, headaches, and tremors (Exhibit 2E, 2). In addition, the claimant has described having a stent implanted because of a damaged aortic valve (Exhibit 7E, 1). The claimant has described difficulties with lifting, requiring reminders to do tasks, is unable to sit for more than an hour at a time, shaking of the hands, and an inability to perform repetitive tasks (Exhibit 7E, 4). In order to address these various health issues, the claimant takes several medications including the following: aspirin, cardizem, lyrica, pravastatin, premarin, synthroid, tricor, and wellbutrin (Exhibit 2E, 5; Exhibit 10E, 1). Side effects from these medications have been described as including aching in her arms and legs (Exhibit 7E, 3).
>
> \* \* \*
>
> Further considering the claimant's allegations as it compares to the medical evidence of record, including documentation subsequent to the period at issue, I find that the claimant is less than credible due to inconsistency in her description of symptoms. While the claimant initially testified she never goes more than 3-4 days without a dizzy spell, the records indicate that the claimant told a physician that she only experiences these spells once or twice a month (Exhibit 18F, 1-2). Later in the hearing, the claimant said she has a dizzy spell once every three weeks. When questioned about the inconsistent statement she was unable to account for the inconsistency between the two statements made during the same hearing. I note that this may indicate that the claimant is exaggerating her symptoms. In addition, at the hearing the claimant indicated that she experienced migraines 1-3 times per week, but in records from 2011 the claimant indicated that she had experienced 5 migraines in 3 years. When asked to address this discrepancy at the hearing, the claimant simply indicated that she had only reported the severe migraines to her physician. It should also be noted that while the claimant has described having fibromyalgia since 2007, the physical examination report indicates that the claimant has normal strength.

(AR 29, 31).

### 1.  Plaintiff's migraines, and leg pain

Plaintiff contends that the ALJ improperly evaluated her testimony regarding her migraine headaches, coronary artery disease, chest pain and leg pain.  As an initial matter, plaintiff's DIB claim is based upon her condition as it existed during a seven-month period, i.e., September 1, 2010 through March 31, 2011 (AR 26).  Plaintiff's hearing occurred on October 12, 2012, more than 1 1/2 years after plaintiff's last insured date.  For that reason, plaintiff's testimony regarding her current condition at that time was not relevant to her DIB claim.  "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of receiving DIB expired on March 31, 2011, she cannot be found disabled unless he can establish that a disability existed on or before that date. *Id.* "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988).

Plaintiff contends that the ALJ misconstrued her testimony regarding migraine headaches and dizzy spells.  The ALJ initially asked plaintiff about her migraines reported to neurologist John R. Visser, M.D. on November 3, 2011 (AR 65).  In a consultative examination with Dr. Visser, plaintiff reported that "[s]he has had 5 episodes in the past 3 years where she will have

a severe pain in her head and brain" (AR 441).  This is consistent with plaintiff's testimony at the hearing, in which she stated, "I had, I had five severe episodes in three years where my head, I got such sharp pains it felt like someone was putting a spear through my head" (AR 66).  While it appears that plaintiff was referring to her migraine headaches, it appears that the ALJ was referring to plaintiff's "episodes of dizziness" (AR 66).

        Plaintiff also reported to Dr. Visser that she had "6 spells" between August and November 2011 in which she had facial numbness, dizziness and black and white spots in front of her eyes (AR 441).  However, even with these symptoms, the neurologist concluded that plaintiff "is essentially normal" and that her visit to the hospital in August 2011 "would be consistent with a complex migraine or vertebrobasilar migraine (AR 443).  The neurologist suggested a prophylaxis for the migraines (AR 443).

        The ALJ's questioning on the migraines and dizziness is not clear to the Court, because the ALJ referred both to plaintiff's visit with Dr. Visser in 2011 and plaintiff's recent visits in 2012 with cardiologist Peter A. Kuhl, M.D. (AR 66-67).  Although the ALJ did not address the date or name of the cardiologist, from the substance of the testimony it appears that the ALJ was referring to plaintiff's report of dizziness on August 14, 2012, i.e., episodes occurring once or twice a month and lasting 5 minutes (AR 66, 493-94).  Plaintiff testified that on some unnamed date, she told Dr. Kuhl that "I told him that I have it sometimes once a day, sometimes two or three times a week, or it would go a couple weeks without having it" (AR 67).  The ALJ noted that "I'm really confused because there's lots of stories here in your medical records about how much dizziness you have" (AR 68). The ALJ's questioning of plaintiff with respect to the dizziness is confusing, because it is unclear as to whether the ALJ's questioning clearly differentiated between plaintiff's reports of

"dizziness" and her reports of "migraines." Upon questioning from her counsel, plaintiff ultimately testified that "[m]y dizziness isn't the same as my migraines," that "[t]he dizziness is separate than my migraines," and that she gets the aura or pain of a migraine "[s]ometimes one time, sometimes three times a week" (AR 69).

In this instance, the Court finds that a compelling reasons exists to disturb the ALJ's credibility determination because the record does not establish the type of inconsistency found by the ALJ. While plaintiff viewed the dizziness and migraines as separate incidents, it is not clear whether the ALJ made such a distinction. In addition, the relevance of plaintiff's testimony regarding her migraines and dizziness, as they existed when she saw Dr. Kuhl in August 2012, at the time of the hearing in October 2012 is not clear as well. Such evidence is, at most, only minimally probative of plaintiff's condition at her last insured date of March 31, 2011. *See Higgs*, 880 F.2d at 863; *Jones*, 1997 WL 413641 at *1. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a re-evaluation of plaintiff's credibility with respect to the migraines and dizziness.

### 2. Plaintiff's coronary artery disease and chest pain

Plaintiff contends that the ALJ erroneously evaluated her coronary artery disease and chest pains as follows:

> The claimant had undergone a stress echocardiogram at the time of the chest pains yielding negative results. While the claimant subsequently underwent an angioplasty later in 2011 subsequent to the date last insured, *records during the period at issue provide no indication that this was a severe impairment prior to the date last insured*.

(AR 30) (emphasis added). While the ALJ included this in her discussion of plaintiff's RFC at step 4 of the sequential process, and plaintiff has included this in her RFC/credibility arguments, this statement is actually a finding from step 2 that plaintiff's chest pains were not a severe impairment.

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff suffered from the severe impairments of status post hemi-arthroplasty/ metatarsophalengeal; joint of great toe [sic] degenerative changes of the toe; dextroscoliosis of the thoracic spine; hypertension; fibromyalgia; history of Raynaud's, right shoulder mild tendinosis of supraspinatus; tendon and mild osteoarthritis of the arthroclavacular joint; and bilateral venous insufficiency (AR 26). The ALJ's failure to include plaintiff's chest pain as a severe impairment at step two is legally irrelevant. Accordingly, this claim of error will be denied.

### 3. Plaintiff's legs

Plaintiff contends that the ALJ erred by failing to address her alleged leg pain. Plaintiff's claim is without merit. At the hearing, plaintiff testified that she has leg pain if she stands for 45 minutes to one hour, and that she needs to put her legs up for at least an hour to relieve the pain (AR 59-60). The ALJ noted plaintiff's claim that side effects from her medications "have been

described as including aching in her arms and legs" (AR 29). The ALJ also reviewed a consultative examination from Timothy Gates, D.O. on April 23, 2011 (AR 306-11) stating as follows:

> With respect to the physical examination, the claimant ambulated symmetrically without evidence of gross weakness or instability and with a normal gait. There is no evidence of varicose veins. The patient did have pain with palpation of the large muscle groups of the arms, legs, back and shoulder girdle musculature on exam today. Forward flexion test reveals a dextroscoliotic curve of the thoracic spine. Range of motion of all joints checked is full and there was no erythema or effusion of any joint.

(AR 30). Accordingly, plaintiff's claim of error will be denied.

### 4. Inappropriate evaluation of plaintiff's daily activities

Plaintiff disputes the ALJ's language used to evaluate her daily activities:

> Although the claimant has described daily activities that are limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, while the claimant's allegations are partially credible, her reportedly limited daily activities are considered to be outweighed by the other factors discussed in this decision. As such, I find the claimant's allegations less than credible.

(AR 29).

The Court finds the ALJ's articulation with respect to daily activities to be so conclusory as to be essentially meaningless. First, plaintiff filled out a "Disability Report - Appeal - Form SSA 3441" provided by the agency, sitting that she declared under penalty of perjury that the information on the form was true and correct to the best of her knowledge (AR 226-28). The ALJ does not explain how plaintiff is to objectively verify her daily activities which were set forth on the agency's own form as verified by plaintiff under penalty of perjury. Second, the ALJ does not

11

explain unidentified "other reasons" that might have caused plaintiff's alleged limitations. Third, the ALJ does not explain the nature of the "relatively weak medical evidence" which could affect plaintiff's daily activities. Fourth, the ALJ does not address which daily activities are "partially credible." Finally, the ALJ does not address how plaintiff's daily activities are "outweighed by other factors," nor does she identify these "other factors." The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). The ALJ has failed to articulate why plaintiff's alleged daily activities are only partially credible and which of those activities are credible. This is another ground for remand under sentence four. Accordingly, on remand, the Commissioner will be directed to re-evaluate plaintiff's credibility with respect to her daily activities.

> **B.   The Commissioner's assessment of plaintiff's mental RFC is not supported by substantial evidence or the relevant legal standards.**

Plaintiff also contends that the ALJ improperly evaluated her mental impairments, specifically diminished memory. The ALJ addressed the evidence in pertinent part as follows:

> Turning to the psychological consultative examination report, the claimant is described the report as well groomed, maintaining good eye contact, in contact with reality, logical, spontaneous and demonstrating a full and appropriate affect (Exhibit 8F). The examiner diagnosed the claimant as having a mood disorder due

12

> to deteriorating medical condition, mild to moderate along with anxiety and depression. In addition, the examiner opined that the claimant would not be prevented from work in any way due to mental impairments. I afford this opinion great weight since it seems well supported by the evidence of record relevant to the period at issue which provides little indication of difficulties relating to mental impairments.
>
> \* \* \*
>
> Lastly, while the claimant has complained of short term memory problems this allegation is not supported by any evidence in the record which would indicate decreased functioning in memory.

(AR 31).

At the administrative hearing held on October 12, 2012, plaintiff testified that there are "a lot of times during the day where I'll start a sentence and I can't think of the word," that her "short term memory is real bad where I can't remember what people told me, you know, yesterday" and that the problem has "been getting progressively worse just in the last year" (AR 63). The consultative examiner, Glen Peterson, Ph.D., L.P., in an examination conducted on April 25, 2011, found that while plaintiff had some short term memory problems, these would not prevent her employment:

> [Plaintiff] said she gets depressed because of her deteriorating physical condition, but my impression is that it is not the mood disorder that would keep her from holding a job. She is emotionally strong. Cognitively, she is intelligent enough, and capable of understanding and carrying out instructions. She started her own business and learned how to keep the books. She claims that she is having difficulty with short-term memory, and there is some evidence of that on the mental status exam today. However, this memory problem would not prevent her from working. If she were not able to work, it would be for some reason other than her emotional condition or memory problems.

(AR 317).

The ALJ's credibility determination with respect to the short term memory problems is supported by substantial evidence. Dr. Peterson found that plaintiff's memory problem would not

prevent her from working. To the extent plaintiff testified that her memory problem had worsened "in the last year", such a worsening would have commenced on or about October 2011, more than six months after her last insured date. As discussed, such evidence is only minimally probative of plaintiff's condition on her date last insured. *See Higgs*, 880 F.2d at 863; *Jones*, 1997 WL 413641 at *1. Based on this record, there is no compelling reason to disturb the ALJ's credibility determination with respect to plaintiff's memory problems. *Smith*, 307 F.3d at 379.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's credibility with respect to the migraines, dizziness and daily activities. A judgment consistent with this opinion will be issued forthwith.


Dated:  March 31, 2015               /s/ Hugh W. Brenneman, Jr.
                                     HUGH W. BRENNEMAN, JR.
                                     United States Magistrate Judge